

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
| STEVE MOSSMAN, IN HIS OFFICIAL CAPACITY AS DENTON COUNTY TAX ASSESSOR-COLLECTOR, | § | No. 08-13-00245-CV |
| | § | Appeal from |
| Appellant, | § | 431st District Court |
| v. | § | of Denton County, Texas |
| BANATEX, LLC, | § | (TC # 2012-71334-431) |
| Appellee. | § | |
| | § | |

## **O P I N I O N**

Automobile mechanics in Texas enjoy a statutory lien allowing them to hold the customer's vehicle until the bill is paid. But to sell the vehicle to satisfy the account requires serving several notices, one of which has to be filed with, and then served by, the local tax assessor-collector's office. In this appeal, we are asked whether a tax assessor-collector's office can be required to file and serve one of those notices when it is presented to the tax assessor-collector not by the mechanic who did the work, but rather by a finance company that may have an assignment of the mechanic's lien. For the reasons set forth below, we hold that it can and affirm the judgment below.

**FACTUAL BACKGROUND**

This case arose out of the repair of Jacqueline Cottery's 2001 Jaguar at the Texas Star Transmission repair shop in Lewisville, Texas.[1] The repairs resulted in an invoice for $1,838.90. The legal issue stems from Banatex LLC's efforts to collect the invoice; how it came to be involved in the case bears some explanation.

Texas Star Transmissions entered into an arrangement with Banatex, (also referred to in some of the documents as FIT Finance or FIT Finance LLC) to assist some customers in financing repair bills. Under Texas Star Transmission's program with Banatex, a customer who could not afford to pay the repair estimate up front could apply with Banatex for a loan up to the amount of the repair. Under the program, the financed repair bill could not exceed 50% of the value of the repaired vehicle. Texas Star Transmissions would assist the customer in filling out Banatex's loan paperwork. If approved, the customer would sign a loan agreement for the net amount of the repair bill due. Cottery signed a loan agreement with Banatex with a principal amount of $1,838.90, requiring twice monthly payments which were automatically debited from her bank account until the note was paid in full.

Texas Star Transmissions assigned to Banatex any receivables from the consumer and "the liens on the repaired vehicle" supporting the receivables. It prospectively assigned all the future liens it would hold when it entered its master agreement with Banatex, and that agreement also gave Banatex a power of attorney permitting it to make a customer specific assignment as needed. The customer also acknowledged the assignment and agreed that Banatex had the same lien rights as would the mechanic doing the work.

---

[1] This appeal was originally filed in the Fort Worth Court of Appeals which transferred the case pursuant to the Texas Supreme Court's docket equalization order. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013).

When it was alleged that Cottery did not repay the loan, Banatex began its efforts to repossess and sell the car to cover the unpaid amount due under the note.[2] As noted in more detail below, Banatex would be required to see that two separate notices were served on the vehicle owner, and any other lien holder, before it could sell the vehicle to pay the debt. One notice could be served by Banatex, but the other had to be provided to the local tax accessor-collector, who would then file and serve the notice. Banatex served the notice that it could, and it provided the second notice to Steve Mossman, in his capacity as the Denton County Tax Assessor-Collector (TAC) for filing and service.[3] The TAC, however, refused to file the notice or forward copies of it to all interested parties. It informed Banatex that "these transactions must be filed through the Court System and have a Court Order for ownership" of the vehicle. The TAC's position was apparently based on a bulletin from the Texas Department of Motor Vehicles that instructed local tax assessors that: "[a] mechanic's lien cannot be filed if a customer enters into a financial agreement with a company or financial institution or with the mechanic for the cost of the repairs."

Banatex then filed the underlying suit seeking a writ of mandamus from the trial court that would direct the TAC to file and serve the statutory notice in Cottery's case. TAC answered and claimed that because Banatex was a financial institution, and not a "worker" entitled to assert the lien, it could not file or serve the notice. Shortly after filing suit, Banatex filed a traditional motion for summary judgment under TEX.R.CIV.P. 166a(c). The motion attached the

---

[2] The eventual sum that Banatex sought to collect through sale of the vehicle was $4,444.54. The finance charge on the $1838.90 as disclosed in loan agreement was $3,240.01. Banatex charged 259.4182% interest, which it claimed was proper under the laws of Utah; the loan documents state that Utah law governs the transaction. We express no opinion on the propriety of the particular terms of this transaction under Utah or Texas law as it was not argued or briefed below, and is not determinative of our resolution of this appeal.

[3] Banatex filed its suit below against Steve Mossman in his official capacity as the Denton County Tax Assessor-Collector and the trial court issued the writ against Mossman and his successors. Michelle French is the current Denton County Tax Assessor-Collector. For convenience, the opinion will refer to the Denton County Tax Assessor-Collector as the TAC.

3

repair order and loan paperwork for Cottery, the master agreement between Texas Star Transmissions and Banatex, and the notices it submitted for filing and service by the TAC. The TAC filed a response, but submitted no controverting evidence, and did not object to any of Banatex's summary judgment proofs.

The trial court granted the motion for summary judgment and issued an order directing the TAC to file and serve the notice for Cottery's vehicle, as well as other notices which may be presented to it, along with the statutory fee, and which contained the following:

> (1) an assertion that the notice is from a holder of a possessory lien on a motor vehicle under TEX.PROP.CODE ANN. § 70.001 (West 2004), other than a person licensed as a franchised dealer under Texas Occupations Code;

> (2) an assertion that the Lienholder has retained possession of a motor vehicle, motorboat, vessel, or outboard motor pursuant to Section 70.001;

> (3) states the physical address of the real property at which the repairs to the motor vehicle were made;

> (4) states the legal name of the person that holds the purported lien;

> (5) states the taxpayer identification number or employer identification number, as applicable, of the person that holds the purported lien; and

> (6) includes a signed copy of the work order authorizing the repairs on the motor vehicle;

### STANDARD OF REVIEW

TAC complains that there was legally insufficient evidence to support the trial courts "finding" that Banatex presented TAC with a worker's lien notice as defined by Section 70.001 of the Property Code. Specifically, TAC argues that there is no evidence that Banatex was a "worker" as that term is used in Section 70.001; a predicate of this argument is that a worker's lien cannot be assigned. Banatex also frames the standard of review as if there were, or could have been, findings of facts and conclusion of law made by the trial court. It contends that

4

without such findings, we should uphold the judgment on any legal theory that finds support in the evidence.

We view the framework for analyzing the issues differently. This case was filed as a mandamus action in the trial court which sought to compel a public official to perform a non-discretionary statutory duty. A mandamus action filed in the trial court is like any other lawsuit. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 792 n.1 (Tex. 1991). Some mandamus actions are resolved in a bench trial where findings of fact and conclusions of law could be issued and reviewed on appeal. *Id.*; *Simmons v. Kuzmich*, 166 S.W.3d 342, 345-46 (Tex.App.-- Fort Worth 2005, no pet.). But this case comes to us as an appeal from the grant of a traditional Rule 166a(c) summary judgment motion. Normally, findings of fact and conclusions of law have no place in summary judgment proceedings. *Linwood v. NCNB Texas,* 885 S.W.2d 102, 103 (Tex. 1994); *Cotton v. Ratholes, Inc.,* 699 S.W.2d 203, 204 (Tex. 1985). Accordingly, we apply the standard of review as we would for any other appeal from a summary judgment. *Zea v. Valley Feed and Supply, Inc.*, 354 S.W.3d 873 (Tex.App.--El Paso 2011, pet. dism'd by agr.)(appellate court should apply the correct standard of review when appellant challenging traditional summary judgment incorrectly relied on legal and factual insufficiency grounds).

We review *de novo* the trial court's decision to grant a summary judgment. *Frost National Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex. 2010); *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). Our focus in reviewing a traditional motion for summary judgment is whether the movant carried the burden of showing that there is no genuine issue of material fact, so that judgment should be granted as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2005); *Browning v. Prostok,* 165 S.W.3d 336, 344 (Tex. 2005). "The nonmovant has no burden to respond to a summary judgment motion

5

unless the movant conclusively establishes its cause of action or defense." *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000). But once the movant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to produce competent controverting evidence that proves the existence of a genuine issue of material fact with regard to any disputed element of a claim or defense. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678-79 (Tex. 1979); *White v. Tackett*, 173 S.W.3d 149, 155 (Tex.App.--Fort Worth 2005, no pet.). In our review of the summary judgment evidence, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant, and resolving any doubts against the motion. *Goodyear Tire and Rubber Co. v. Mayes,* 236 S.W.3d 754, 756 (Tex. 2007). Where, as here, a trial court does not specify the grounds upon which it relied in granting a summary judgment, we will affirm if any ground is meritorious. *See Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex. 1995).

**STANDING**

As a preliminary matter, Banatex challenges the TAC's standing to bring this appeal. Specifically, Banatex argues that the TAC is neither the owner, nor a lienholder of the vehicle, and lacks standing to challenge whether Banatex has a valid enforceable lien on the vehicle.

Standing is a purely legal question that we review *de novo. The M.D. Anderson Cancer Center v. Novak,* 52 S.W.3d 704, 708 (Tex. 2001); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). It is a prerequisite to subject-matter jurisdiction, which is essential to a court's power to decide a case. *Bland Independent School District v. Blue,* 34 S.W.3d 547, 553-54 (Tex. 2000). The general test for standing requires that there (a) must be a real controversy

6

between the parties, which (b) will be actually determined by the judicial declaration sought. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993); *Board of Water Engineers of the State of Texas v. City of San Antonio,* 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955).

We both agree and disagree with Banatex's standing argument and conclude its resolution is intertwined with the merits of the case. We agree that the TAC is not the appropriate party to challenge the legal validity of the lien, or any assignment of the lien made as a part of the financing of Cottery's vehicle repair. It was not a party to that agreement, and has no property interest in the vehicle itself. The staff of the TAC is likely not well situated to resolve the legal validity of the lien under Texas or Utah law, whichever might ultimately control those matters. Conversely, the owner of the vehicle, or any first lien holder, would have the motive and opportunity to fully litigate those issues.[4]

Conversely, the TAC does have standing to litigate the question of what its statutory duties are when presented with a notice for filing and service. "A writ of mandamus will issue to compel a public official to perform a ministerial act. An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson,* 806 S.W.2d at 793; *see also Community Health Choice, Inc. v. Hawkins,* 328 S.W.3d 10, 13 (Tex.App.--Austin 2010, pet. denied). The TAC has no duty to file a notice unless the notice conforms to the dictates of the statute governing the TAC. *See City of Abilene v. Fryar*, 143 S.W.2d 654, 657 (Tex.Civ.App.--Eastland 1940, no writ)(county

---

[4] Here, for instance, notice of the intended sale of the vehicle was sent not only to Cottery, but also to another co-owner, and the first lien holder of the vehicle. A first lien holder has the motive and ability to initiate its own action to challenge a subordinate lien holder who is attempting to gain a first in line lien position. *See Chase Manhattan Bank USA, N.A. v. Daimler Motors, Inc.*, No. 05-01-01904-CV, 2002 WL 31513404 (Tex.App.--Dallas Nov.13, 2002, no pet.)(not designated for publication)(original lender challenged repair worker's lien for allegedly not complying with Property Code provisions for sale of vehicle). There is also an expedited procedure for a debtor, or one who has an interest in real or personal property, to file a motion to have a court determine if a filed instrument asserting a lien is fraudulent. TEX.GOV'T CODE ANN § 51.903 (West 2013).

clerk would be required to file bonds complying with statute and reject for filing bonds not complying with statute). Whether the TAC has a duty to file and serve the notice goes to the heart of whether the TAC refused to perform a ministerial act. Banatex's standing argument thus begs the underlying question in this case: did Banatex conclusively establish that the TAC had a non-discretionary duty to file and serve the notice letter pertaining to Ms. Cottery's repair. To answer that question, we digress to explain the TAC's role and its obligations with regard to Section 70.001 liens.

## STATUTORY SCHEME

Chapter 70 of the Property Code provides statutory liens to various tradespersons. *E.g.,* TEX.PROP.CODE ANN. § 70.001 (West 2014)(laborers who repair articles, including those who repair vehicles). *Id*. at § 70.002 (those who repair or clean garments). *Id*. at § 70.003 (stable keeper's, garageman's, pasturer's, and cotton ginner's lien) *Id*. § 70.004 (possession of motor vehicle, motorboat, vessel, or outboard motor). These liens attach while the customer's property is in the possession of the tradesperson. *W.E. Stephens Mfg. Co. v. Goldberg*, 225 S.W.3d 77, 81 (Tex.App.--El Paso 2005, pet. denied).

The lien created in Section 70.001, however, is somewhat unique. Like the other liens, a worker who repairs an "article, including a vehicle" may retain possession of the article until the amount due under the contract for repairs has been paid. *Id*. at § 70.001(a)(1). But unlike some of the other liens, if the worker relinquishes possession of an article in exchange for "a check, money order, or a credit card transaction" which is later dishonored, the worker can retake possession of the article under the Business and Commerce Code. *Id*. at § 70.001(b), referencing TEX.BUS.&COM.CODE Ann. § 9.609 (West 2011). That Business and Commerce Code provision

8

allows the creditor to directly retake possession if it can be done peaceably and by judicial process otherwise. *Id*.

To retake possession, the worker needs to meet an additional requirement. The person obligated under the repair contract must have first signed a separate written notice, apart from the repair order, that conspicuously states that the article is subject to repossession. *Id*. at § 70.001 (c)(1) and (2). The customer may then also be liable for the fair market value of the cost of repossession. *Id*. at 70.001(d). But these requirements only permit the worker to re-take possession of the article until the bill is paid. To sell the article, here a motor vehicle, the lien holder must further comply with Section 70.006.

Section 70.006, which is at the heart of this case, directs that the "holder of a lien" must send a notice by certified mail, return receipt requested, to the owner and any lien holder of the motor vehicle. TEX.PROP.CODE ANN. § 70.006(a)(West 2014). The notice must contain four statutorily dictated pieces of information:

    (1) the physical address of the real property at which the repairs to the motor vehicle were made;

    (2) the legal name of the person that holds the possessory lien for which the notice is required;

    (3) the taxpayer identification number or employer identification number, as applicable, of the person that holds the possessory lien for which the notice is required; and

    (4) a signed copy of the work order authorizing the repairs on the motor vehicle.

*Id.* at 70.006 (b-1).

The holder of a possessory interest must also, within thirty days of when the charges accrue, file the same notice with the local county tax assessor-collector's office along with a $25

administrative fee. *Id.* at 70.006 (a). The duties of the local tax assessor-collector are set out in Section 70.006(h):

> Not later than the 15th business day after the date the county tax assessor-collector receives notice under this section, the county tax assessor-collector shall provide a copy of the notice to the owner of the motor vehicle and each holder of a lien recorded on the certificate of title of the motor vehicle. Except as provided by this subsection, the county tax assessor-collector shall provide the notice required by this section in the same manner as a holder of a lien is required to provide a notice under this section, except that the county tax assessor-collector is not required to use certified mail. Notice under this section is required regardless of the date on which the charges on which the possessory lien is based accrued.

*Id.* If the owner or other secured creditor does not pay the lien amount before the 31st day after the notice is mailed, the lienholder may sell the vehicle at a foreclosure sale. *Id.* at § 70.006(f). If the statute is complied with, the lienholder enjoys priority over all other liens. *Id.* But failure to send the proper notices under Section 70.006 subordinates the worker's lien to all other recorded security interests in the vehicle. *Id.* at § 70.006(b-2).

Finally, criminal penalties apply to anyone who "knowingly provides false or misleading information in a notice required by this section." *Id.* at § 70.006 (b-3).

## ANALYSIS

TAC acknowledges that it was presented with Banatex's notice pertaining to Cottery's motor vehicle. It also agrees that if presented with an "actual worker's lien notice," it has a duty to file and serve that notice. Its only argument here is that Banatex cannot be a lien holder because it is not a "worker." Without proof that Banatex was a "worker," it contends the TAC did not have a duty to file or serve the notices provided it.

As a general proposition, a government official charged with the duty to file a particular instrument must do so when presented with that instrument which appears regular on its face. This conclusion flows from those cases where courts have required district or county clerks

10

to file items which they have a statutory duty to file. *In re Smith*, 263 S.W.3d 93, 95-96 (Tex.App.--Houston [1st Dist.] 2006, no pet.)(district clerk had ministerial duty to file post-trial motions whether they were ultimately deemed timely or not); *Turrentine v. Lasane*, 389 S.W.2d 336, 337 (Tex.Civ.App.--Waco 1965, no writ)(mandamus issued to compel clerk to file declaration of heirship). The conclusion also flows from the guidance the Texas Attorney General's Office has consistently provided over the years to those public officials charged with the duty to process various kinds of filed instruments and documents. See TEX.ATT'Y GEN. OP. No. LO-98-016 (1998)("If a document covered by a filing statute is regular on its face, the clerk may not refuse to file it based on extraneous facts."); TEX.ATT'Y GEN. OP. JM-166 (1984)("This office has repeatedly held that a county clerk acts in a ministerial capacity in receiving certificates of nomination and in placing names of nominees on the general election ballot. Where the certificate is regular on its face, the county clerk has neither the duty nor authority officially to determine questions of regularity or irregularity, a process which would depend upon an ascertainment and determination of facts extraneous to the certificate."). We see no reason why this same rule would not apply to the TAC with regard to the Section 70.006 notices that it is charged with filing and serving.

Returning to the summary judgment record, we hold that Banatex presented summary judgment evidence demonstrating that it presented a notice that appears, at least on its face, to meet the requirement of Section 70.006. The notice itself lists "Texas Star Transmission" as the legal holder of the worker's lien, and Banatex as its attorney in fact. The notice lists the street address where the repairs were made. It attached a copy of the repair invoice. The notice claims the vehicle was in "our possession." Based on the requirements of Section 70.006, the submitted

11

notice appears regular on its face.[5]

Once Banatex met its initial summary judgment burden, TAC then had to come forward with some controverting evidence. *Centeq Realty, Inc.,* 899 S.W.2d at 197; *City of Houston,* 589 S.W.2d at 678-79. While it attached no summary judgment proofs to its response, it did attempt to argue below, and to this court, that Banatex as a matter of law cannot be an assignee of the lien. In effect, it invokes the oft cited no evidence challenge that a court should disregard any evidence which is barred by rules of law or evidence. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). But we reject TAC's argument for a number of reasons.

First, the notice presented to the TAC identified Texas Star Transmission as the entity holding the worker's lien and Banatex only as its attorney in fact. TAC does not contend that Texas Star Transmission is not a "worker" or that it did not do the work on the Cottery's vehicle. We note the discrepancy between the notice which claims that Texas Star Transmission is the entity holding the lien, and other portions of the summary judgment record suggesting that Texas Star Transmissions prospectively assigned any future liens it might acquire to Banatex. But the TAC never relied on this discrepancy as a basis to refuse to file the notice, and the statute itself has sufficient protection against misrepresentations made in TAC filed notices. TEX.PROP.CODE ANN. § 70.006(b-3).

Second, the TAC offers no compelling reason why Texas law would not permit an assignment of Texas Star Transmission's lien rights. Its argument that a worker's lien cannot be assigned is based exclusively on the wording of Section 70.001 which consistently identifies a

---

[5] Section 70.006 (b-1) also requires that the notice contain the taxpayer identification number, or employer number, for the entity which holds the possessory lien. The notice here has a number next to Banatex's name which has the same number of digits as a social security and tax payer identification number, but it is not specifically identified as such. None of the briefing addresses any deficiency in the notice based on this criteria, and it is not our role to suggest arguments never made or developed below. *DSW Masters Holding Corp. v. Tyree,* No. 02-11-00296-CV, 2012 WL 4661455 at *5 (Tex.App.--Fort Worth Oct. 4, 2012, no pet.)(mem. op.); *Valadez v. Avitia,* 238 S.W.3d 843, 845 (Tex.App.--El Paso 2007, no pet.).

12

"worker" as one who holds the lien. But simply because a statute creates a lien in the name of one person does not mean it could not be assigned to another. For instance, TEX. PROP.CODE ANN. § 53.021(a)(2)(West 2014) creates a lien for a person who furnishes labor or materials for the construction or repair of a building or other structure. Liens under this statute, commonly referred to as "mechanic's liens," have long been held to be assignable. *Wortham v. Trane Co.,* 432 S.W.2d 520, 520 (Tex. 1968); *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 57 (Tex.App.--San Antonio 2005, pet. denied). Therefore the mere fact that Section 70.001 creates a lien in favor of a "worker" does not by itself preclude the worker assigning the lien to another.

> The only text in Section 70.001 that addresses third parties is found in subsection (e):

> A worker may not transfer to a third party, and a person who performs repossession services may not accept, a check, money order, or credit card transaction that is received as payment for repair of an article and that is returned to the worker because of insufficient funds or no funds, because the drawer or maker of the check or money order or the credit card holder has no account, or because the account on which the check or money order is drawn or the credit card account has been closed.

TEX.PROP.CODE ANN. § 70.001(e). This section might be read to prevent the transfer of check, money order, or credit that has already been dishonored to a third party, particularly to a person performing a repossession, but the TAC does not suggest that is the case here.

We also find it instructive that while Section 70.001(e) creates a lien in favor of a "worker," Section 70.006 allows enforcement by the "holder of a lien." Were the term "worker," which is nowhere defined in the statute, meant to have some exclusive meaning preventing the assignment of any rights, then Section 70.006 which governs sale of the item would not use a different, and arguably broader term. In summary, whether an assignment of Texas Star Transmissions' lien is proper, or even occurred in this case, is a matter between Cottery, the first

lien holder, Banatex, and Texas Star Transmissions. The TAC's role in this transaction is only to file and serve any notices which facially comply with the Section 70.006. Because the notice presented to the TAC concerning Ms. Cottery's vehicle appears regular on its face, the TAC had a duty to file and serve it. Finding no error, we overrule the sole issue and affirm the judgment and writ of mandamus.

May 14, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior)
Larsen, J. (Senior), sitting by assignment