ACCEPTED
15-25-00033-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/28/2025 11:45 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00033-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/28/2025 11:45:43 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE COURT OF APPEALS FOR THE FIFETEENTH DISTRICT**

**AUSTIN, TEXAS**

_____

**EDITH OKECHUKWU OMIETIMI,** *Appellant*

**v.**

**TEXAS BOARD OF NURSING,** *Appellee*

_____

ON APPEAL FROM THE 459TH JUDICIAL DISTRICT COURT,
TRAVIS COUNTY, TEXAS
CAUSE NO. D-1-GN-24-3659
THE HONORABLE MAYA G. GAMBLE, PRESIDING

_____

**APPELLANT'S BRIEF**

_____

Marc M. Meyer
State Bar No. 24070266
E-mail:  marc@marcmeyerlawfirm.com
2300 Woodforest Blvd., Suite 600
MONTGOMERY, TX 77316
Telephone:  (281) 259-7575
**ATTORNEY FOR APPELLANT**
**EDITH OKECHUKWU OMIETIMI**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

PARTIES ............................................................................................... iii

INDEX OF AUTHORITIES ...................................................................iv

GLOSSARY OF ABBREVIATED TERMS ..........................................x

STATEMENT OF THE NATURE OF THE CASE...................................1

STATEMENT REGARDING ORAL ARGUMENTS.........................2

ISSUES PRESENTED............................................................................2

STATEMENT OF FACTS.......................................................................3

SUMMARY OF ARGUMENT................................................................7

AUTHORITIES AND ARGUMENT........................................................8

    A.    Standard of Review ....................................................................8

    B.    The Nursing Practice Act and Board Rules ..............................13

    C.    Appellant's Nursing Education was Accepted by the Texas Board of Nursing During the Endorsement Process under Texas Occupations Code § 301.157(d-4) ......................................................................18

    D.    There is No Authority for the Assertion That Appellant had the Burden of Persuasion to Show She was Nonetheless Qualified for Licensure Upon Application for Renewal.......................................................22

E. The Board may not Base Disciplinary Action, including Denial of License Renewal, When no Violation of Section 301.452(b) is Found. ...............30

F. Renewal of a Nursing License is a Ministerial Duty and Failure to Renew Appellant's License is a Clear Abuse of Discretion ...............................28

G. Revocation of Appellant's Nursing License by Denying Renewal of Her License Violates Appellant's Due Course of Law Rights Under the Texas Constitution and is Arbitrary and Capricious...........................................34

**CONCLUSION**.................................................................................................41

**PRAYER** ........................................................................................................42

**CERTIFICATE OF SERVICE** .........................................................................43

**CERTIFICATE OF COMPLIANCE** ..................................................................44

**APPENDICIES**............................................................................................ A-1

**PARTIES**

**Appellant:**

Edith Okechukwu Omietimi, is an Individual whose address is 3302 Mystic Shadow Ln., Katy, TX 77494. The Appellant is represented by Marc M. Meyer with the Law Office of Marc Meyer, PLLC, 2300 Woodforest Blvd., STE 600, Montgomery, TX 77316. Appellant was represented at the State Office of Administrative Hearings for trial by John Shepperd and Lina Al-Salim with Wilson Elser, 909 Fannin St. STE 3300, Houston, TX 77010.

**Appellee:**

Texas Board of Nursing ("Board") is a State Government Agency located at 1801 Congress Ave., Suite 10-200, Austin, Travis County, Texas, 78701. The Appellee is represented by Kathy Johnson, Assistant Attorney General, with the Office of the Attorney General of Texas, Administrative Law Division, PO Box 12548, Austin, TX 78711-2548. Appellee was represented at the State Office of Administrative Hearings for trial by John Vanderford, Deputy General Counsel, Texas Board of Nursing, 1801 Congress Ave., STE 10-200, Austin, TX 78701.

# INDEX OF AUTHORITIES

**Attorney General Opinions**

TEX.ATT'Y GEN. OP. LO–98–016 (1998) ...........................................................32

TEX.ATT'Y GEN. OP. JM–166 (1984) ...............................................................32

**Cases**

*Accident Fund Ins. Co. of Am. v. Tex. Dep't of Ins.*, 23-0273, 23-0950 (Tex. Feb 07, 2025) .......................................................................................................11, 31

*Alford v. State,* 806 S.W.2d 581, 585 (Tex. App.—Dallas, 1991), aff'd, 866 S.W.2d 619 (Tex. Crim. App. 1993)..........................................................................24

*Anderson v. City of Seven Points*, 806 S.W.2d 791 (Tex. 1991)............................31

*Cargill* v. *Garland*, 57 F. 4th 447, 465–468 (CA5 2023) ......................................31

*Chalker Energy Partners Iii, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668 (Tex. 2020)..........................................................................................................22

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984) ...............................................................................................................11, 30

*City of El Paso v. Pub. Util. Comm'n of Tex.,* 883 S.W.2d 179 (Tex. 1994) ....10, 41

*City of Houston v. Jackson,* 192 S.W.3d 764 (Tex.2006) .......................................30

*City of Rockwall v. Hughes,* 246 S.W.3d 621 (Tex.2008)......................................10

*Ex Parte Myers*, 68 S.W.3d 229 (Tex. App. 2002) .................................................12

*Federal Sign v. Texas Southern University*, 951 S.W.2d 401 (Tex. 1997) ............21

*Garrett v. The Tex. State Bd. of Pharm.*, 03-21-00039-CV, at \*12–14 (Tex.App.–Austin, Jan 25, 2023, no pet.) ...................................................36, 37, 39

*Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591 (Tex.2001).......21

*Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 423 (Tex. App.-Houston [1st Dist.] 2000, no pet.) ...................................................24

*Greene v. McElroy*, 360 U.S. 474, 492 (1959) ...................................................35

*Goldberg v. Kelly*, 397 U.S. 254, 262 n.8 (1970) ...................................................35

*Harris Cty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113 (Tex. 2017) ...................................................10

*Hinkley v. Texas State Bd. of Med. Examiners,* 140 S.W.3d 737 (Tex.App.-Austin 2004, pet denied)...................................................9

*Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018). .................34

*Hovel v. Gatzri*, 490 S.W.3d 132 (Tex.App.–Houston [1st Dist.] 1964), ...............29

*Jernigan v. Langley*, 111 S.W.3d 153 (Tex. 2003) (per curiam)............................20

*Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex. 1985).......................12

*Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Comm'n,* 855 S.W.2d 792 (Tex.App.-Austin 1993, no writ) ...................................................41

*Levy v. Texas State Bd. of Med. Exam'rs,* 966 S.W.2d 813 (Tex. App.-Austin 1998, no pet.)...................................................12

*Little-Tex. Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591 (Tex. 2001) ..................................................................................................21

*Loper Bright Enters. v. Raimondo, Sec'y of Commerce*, 603 U.S. 369 (2024) .........................................................................................................11, 30, 31

*Mathews v. Eldridge,* 424 U.S. 319 (1976) ........................................................23

*McClelland v. Tex. Health & Human Servs. Comm'n*, 635 S.W.3d 410 (Tex. App. 2021) ...............................................................................................30

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973)..................24, 25

*Mireles v. Texas Dep't. of Pub. Safety,* 9 S.W.3d 128 (Tex. 1999)..........................9

*Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559 (Tex. 2000) ......................9

*Mosley v. Texas Health &Human Servs. Comm'n*, 593 S.W.3d 250 (Tex. 2019) ....................................................................................................34, 37,38

*Mossman v. Banatex, LLC,* 479 S.W.3d 854 (Tex. App. 2015) ..............................32

*Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108 (Tex. 1999) (per curiam).........................................................20

*Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69 (Tex. 2015) ....................................................................................................35, 36, 39

*Pub. Util. Comm'n v. City Pub. Serv. Bd.,* 109 S.W.3d 130 (Tex. App.—Austin 2003, no pet.) .....................................................................................................10

*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water* , 336

S.W.3d 619 (Tex. 2011)..................................................................10, 30, 31

*Rogers v. Texas Board of Architectural Examiners*, 390 S.W.3d 377, 384 (Tex.

App.-Austin 2011, no pet.) ........................................................................12

*Scally v. Tex. State Bd. of Med. Exam'rs* , 351 S.W.3d 434 (Tex. App.—Austin

2011, pet. denied)...........................................................................10, 22, 23

*Schwab v. Schlumberger Well Surveying Corp.,* 198 S.W.2d 79 (Tex. 1946) .......29

*Sheffield v. Nobles,* 378 S.W.2d 391, 392 (Tex.App.–Austin 1964, writ ref'd) .....29

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471 (Tex. 2017) ............................20

*Smith v. Decker*, 312 S.W.2d 632, 633 (Tex. 1958) ................................................35

*State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006)* ...............................................12

*Texas Department of Insurance v. State Farm Lloyds,* 233 (Tex.App.-Austin 1993,

no pet.)........................................................................................................41

*Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.,* 665 S.W.2d 446

(Tex.1984)..................................................................................................41

*Texas State Bd. Of Med. Examiners v. Mann* 413 S.W.2d 382 (Tex. 1967). ....32, 33

*Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351 (Tex. 2005) ..........................21

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992)........................................12, 28, 33

*Willis v. BPMT, LLC,* 471 S.W.3d 27 (Tex.App.–Houston [1st Dist.] 2015, no

pet.)............................................................................................................30

**Law Review Articles**

Robert W. Hamilton, *The Corporate Entity,* 49 Tex. L.Rev. 979, 995–96 (1971)  29

**Constitution & Statutes**

TEXAS CONSTITUTION ART. I, §19 ........................................................................2

TEXAS GOVERNMENT CODE § 311.011..................................................................10

TEXAS GOVERNMENT CODE § 311.016(1).............................................................15

TEXAS GOVERNMENT CODE § 2001.001................................................................8

TEXAS GOVERNMENT CODE § 2001.051-.052 ......................................................22

TEXAS GOVERNMENT CODE § 2001.058(e)...............................................14, 17, 18

TEXAS GOVERNMENT CODE § 2001.174..................................................................8

TEXAS GOVERNMENT CODE § 2001.174(2)(E).........................................................9

TEXAS GOVERNMENT CODE § 2260........................................................................21

TEXAS HEALTH & SAFETY CODE § 108.005 ..........................................................40

TEXAS OCCUPATIONS CODE § 301.157 ..................................................................15

TEXAS OCCUPATIONS CODE § 301.157 (d) .......................................2, 14, 19, 20, 25

TEXAS OCCUPATIONS CODE § 301.157(d-4) ...........................................2, 15, 19, 20

TEXAS OCCUPATIONS CODE § 301.252...................................................................15

TEXAS OCCUPATIONS CODE § 301.260.......................................................2, 15, 26

TEXAS OCCUPATIONS CODE § 301.301(b).........................................................23, 28

TEXAS OCCUPATIONS CODE § 301.3011(a).............................................................28

TEXAS OCCUPATIONS CODE § 301.301 – 308 .......................................................28, 33

TEXAS OCCUPATIONS CODE § 301.451.................................................................15, 16

TEXAS OCCUPATIONS CODE § 301.451 (1).................................................................16

TEXAS OCCUPATIONS CODE § 301.451 (3).................................................................16

TEXAS OCCUPATIONS CODE § 301.452 .................................................................13, 14

TEXAS OCCUPATIONS CODE § 301.452 (b).................................8, 16, 26, 27, 28, 31

TEXAS OCCUPATIONS CODE § 301.452 (b)(1) .......................................................13, 14, 27

TEXAS OCCUPATIONS CODE § 301.452 (b)(2) .......................................................13, 14, 27

TEXAS OCCUPATIONS CODE § 301.452 (b)(5) .......................................................13, 14 ,27

TEXAS OCCUPATIONS CODE § 301.452 (b)(10) .....................................................13, 14, 27

TEXAS OCCUPATIONS CODE § 301.453.................................................................. 16

TEXAS OCCUPATIONS CODE § 301.453 (a)(1) .......................................................16, 27

**Rules**

1 TEXAS ADMINISTRATIVE CODE § 155.427.....................................................22, 23

1 TEXAS ADMINISTRATIVE CODE § 155.507.........................................................17

22 TEXAS ADMINISTRATIVE CODE § 213.23 .........................................................17

22 TEXAS ADMINISTRATIVE CODE § 213.23 (c) .....................................................17

22 TEXAS ADMINISTRATIVE CODE § 213.23 (f).......................................................17

22 TEXAS ADMINISTRATIVE CODE § 213.23 (g).......................................................18

22 TEXAS ADMINISTRATIVE CODE § 213.27 et. seq. ...............................................17

22 TEXAS ADMINISTRATIVE CODE § 213.29.........................................................................26

22 TEXAS ADMINISTRATIVE CODE § 213.29 (c)...................................................................29

22 TEXAS ADMINISTRATIVE CODE § 213.29 (f)(1)...............................................................29

22 TEXAS ADMINISTRATIVE CODE § 213.29 (k)(1) ........................................................26, 29

22 TEXAS ADMINISTRATIVE CODE § 214 et. seq. ...............................................................16

22 TEXAS ADMINISTRATIVE CODE § 216.11.................................................................26, 29

22 TEXAS ADMINISTRATIVE CODE § 217.5(a) ...................................................................40

22 TEXAS ADMINISTRATIVE CODE § 217.5 (a)(1) .......................................................2, 16, 25

22 TEXAS ADMINISTRATIVE CODE § 217.5 (a)(1)(B) ......................................................2, 26

22 TEXAS ADMINISTRATIVE CODE § 217.5 (a)(1)(E)(i) .......................................................40

22 TEXAS ADMINISTRATIVE CODE § 217.5 (a)(1)(F)...........................................................40

22 TEXAS ADMINISTRATIVE CODE § 217.6...........................................................................29

22 TEXAS ADMINISTRATIVE CODE § 217.11.........................................................................39

22 TEXAS ADMINISTRATIVE CODE § 217.12 .......................................................................14

22 TEXAS ADMINISTRATIVE CODE § 217.12 (4).................................................................14

22 TEXAS ADMINISTRATIVE CODE § 217.12 (6)(D) ...........................................................14

# GLOSSARY OF ABBREVIATED TERMS

ALJ                  Administrative Law Judge

APA                 Administrative Procedures Act

AR                   Administrative Record

CR                   Clerk's Record

PFD                 Proposal for Decision

SOAH            State Office of Administrative Hearings

No. 15-25-00033-CV

_____

# IN THE COURT OF APPEALS FOR THE FIFETEENTH DISTRICT

# AUSTIN, TEXAS

_____

## EDITH OKECHUKWU OMIETIMI, *Appellant*

## v.

## TEXAS BOARD OF NURSING, *Appellee*

_____

ON APPEAL FROM THE 459TH JUDICIAL DISTRICT COURT,
TRAVIS COUNTY, TEXAS
CAUSE NO. D-1-GN-24-3659
THE HONORABLE MAYA G. GAMBLE, PRESIDING

_____

## APPELLANT'S BRIEF

_____

**TO THE HONORABLE JUDGES OF SAID COURT:**

**NOW COMES** Edith Okechukwu Omietimi, hereinafter called Appellant, to file this Appellant's Brief in this matter:

## STATEMENT OF THE NATURE OF THE CASE

This matter is an appeal of an administrative disciplinary action taken by the Texas Board of Nursing ("Board") against the licensed vocational nursing license held by the Appellant, Edith Okechukwu Omietimi. In a final Order and Opinion of the Board, the Board denied the renewal of Appellant's Vocational Nursing License

for violations of TEXAS OCCUPATIONS CODE §§ 301.157(d) & 301.260, and predicated on violations of 22 TEXAS ADMINISTRATIVE CODE §§ 217.5(a)(1) & (a)(1)(B). The Appellant asserts multiple errors based on Texas Government Code § 2001.174(2) and Texas Constitution art. I, §19.

## STATEMENT REGARDING ORAL ARGUMENTS

Appellant requests oral arguments because the issues presented in this case raise matters of first impression related to the Board, especially whether there is a ministerial duty of the Board of Nursing to renew a professional license, and whether the Appellant's due course of law rights under the Texas Constitution were violated by the denial of renewal.

## ISSUES PRESENTED

The Appellant raises the following three issues:

a. Appellant's nursing education was accepted by the Texas Board of Nursing during the endorsement process under Texas Occupations Code § 301.157(d-4);

b. The Administrative Law Judge improperly asserted that the Appellant had the burden of persuasion to show she was nonetheless qualified when filing an application for license renewal;

c. Renewal of a nursing license is a ministerial duty and failure to renew Appellant's license is a clear abuse of discretion;

d. Revocation of Appellant's nursing license by denying renewal of her license violates Appellant's Due Course of Law rights under the Texas Constitution and is therefore arbitrary and capricious.

## STATEMENT OF FACTS

During January 2023, the Federal Bureau of Investigation (FBI) and the United States Department of Health and Human Services-Office of Inspector General (HHS-OIG) announced "Operation Nightingale," a law enforcement action against an allegedly fraudulent nursing diploma scheme.[1] More than 7,600 individuals nationwide were identified as participants in a scheme to obtain fraudulent degrees that allowed them to sit for the National Council Licensing Examination (NCLEX) and, if they passed the NCLEX, to obtain licenses to practice nursing. Operation Nightingale exposed an alleged conspiracy between private businesses acting as recruiters, primarily in New Jersey, New York, and Texas, and the owners of South Florida nursing schools. The recruiters found aspiring nurses and offered instruction that was geared to passing the NCLEX, and the nursing school owners issued false diplomas and transcripts for the students. The alleged scheme ran a gamut, ranging from those who simply exchanged money for a nursing diploma, to those who received minimal instruction, to those who completed more robust programs that included clinical components. Along with more than 100 other Texas nurses, Appellant was identified as potentially involved in Operation Nightingale. Administrative Record (hereinafter "AR"), at 4767.

---

[1] https://www.justice.gov/usao-sdfl/pr/fraudulent-nursing-diploma-scheme-leads-federal-charges-against-25-defendants (last visited September 27, 2024).

Appellant attended Sacred Heart International Institute, Inc. (Sacred Heart), one of the schools implicated in Operation Nightingale. Sacred Heart, located in Deerfield Beach, Florida, was approved by the Florida Board of Nursing (Florida BON) in 2013 as an in-person nursing education program. *Id.*, at 4803, Finding of Fact No. 7. Appellant attended what purported to be a Houston-based satellite campus of Sacred Heart, which she sincerely believed was a legitimate nursing education program and an authorized satellite campus of Sacred Heart. *Id.*, Finding of Fact No. 12. Appellant enrolled in Sacred Heart – Houston (SHH) in October 2019 and attended classes from November 2019 through October 2020.

In March 2020, Serge Jean, the lead instructor at Sacred Heart, notified students he was monitoring the impact of COVID-19. *Id.*, at 4804, Finding of Fact No. 15. On March 21, 2020, Governor Abbott issued a disaster declaration in Texas due to COVID-19, and this disaster declaration included a waiver for certain rules of the Board related to nursing education. The waiver expired on September 1, 2022. *Id.*, Finding of Fact No. 16.

On March 21, 2020, the Florida State Surgeon General issued an Emergency Order suspending requirements for didactic and clinical nursing programs. The Emergency Order allowed programs—with the approval of the appropriate administrator—to substitute supervised remote live videoconferencing for didactic hours and simulation for all supervised clinical instruction hours required by any

statute or rule. The suspension ended June 26, 2021. *Id.*, Finding of Fact No. 17.

On April 20, 2020, Mr. Jean sent students a second letter, advising that all classes, including didactic and clinical instruction, would be conducted online via videoconference due to COVID-19 precautions. The correspondence from Mr. Jean referenced "Jean's NCLEX Review," not Sacred Heart. *Id.*, Finding of Fact No. 18. Despite the references to Jean's NCLEX Review in Mr. Jean's letters, Appellant reasonably and sincerely believed her program was SHH, affiliated with Sacred Heart. Appellant also reasonably and sincerely believed her program was authorized to provide all instruction online. *Id.*, Finding of Fact No. 21.

Appellant completed the SHH program in October 2020 and took and passed the NCLEX-PN (for vocational or practical nurses) a few months later. She then obtained her Florida LPN license from the Florida BON and the Texas LVN license from the Board by endorsement. *Id.*, at 4805, Finding of Fact No. 22. Appellant submitted a license renewal application in April 2023 and she continued to believe she had completed a legitimate one-year program. And because she passed the NCLEX-PN, the Texas Board's Jurisprudence and Ethics exam, and held a valid Florida LPN license, Appellant believed she met the requirements to hold a Texas LVN license. *Id.*, Finding of Fact No. 27. Appellant is currently enrolled in a different program and expects to graduate in 2026 with a bachelor's degree in nursing. *Id.*, Finding of Fact No. 28.

On April 7, 2023, Appellant submitted an application to renew her license (Renewal). *Id.*, at 4802, Finding of Fact No. 2. Staff of the Texas BON proposed to revoke her LVN license and deny the Renewal. *Id.* Appellant timely requested a contested-case hearing before the State Office of Administrative Hearings (SOAH). SOAH Administrative Law Judge Pratibha J. Shenoy convened the hearing on the merits via Zoom videoconference on September 25, 2023.

On November 20, 2023, Judge Shenoy issued a proposal for decision (PFD) recommending to the Board that the Texas BON should uphold the proposed denial of renewal of the Appellant's LVN license. *Id.*, at 4764–810. Appellant timely filed exceptions to the PFD, and the Texas BON timely filed a response. On January 11, 2024, Judge Shenoy denied Appellant's exceptions. *Id.*, at 4820–21.

On March 15, 2024, the Texas BON timely notified the Appellant of proposed Board action at the April 2024 meeting of the Texas BON. On April 22, 2024, the Texas BON took action, denying the renewal of Appellant's LVN license. *Id.*, at 4828–30. On May 13, 2024, Appellant timely filed a Motion for Rehearing with the Texas BON, which was overruled by operation of law on June 10, 2024. Tex. Government Code § 2001.146 (c).

On June 10, 2024, Appellant filed an Original Petition for Judicial Review and Application for Temporary Injunction. Clerk's Record (CR), at 3–16. At the request of the Appellant, the case was assigned to the 459th Judicial District Court,

Travis County on June 14th, 2024. The final hearing in this matter occurred on December 19th, 2024, and Judge Maya G. Gamble issued a final judgment on February 19th, 2025 affirming the Final Opinion and Order of the Board. CR, at 22–23. Appellant timely filed her Notice of Appeal on March 21st, 2025. CR, at 24–26.

## SUMMARY OF THE ARGUMENT

This matter is an appeal for the denial of licensure renewal by the Texas Board of Nursing. The Board alleges that the Appellant did not complete a nursing education program that was substantially equivalent to the requirements of the Board and intentionally misrepresented her education to the Board in an effort to fraudulently obtain a vocational nursing license. After a contested case hearing, SOAH ALJ Prabitha Shenoy issued a Proposal for Decision which concluded that the Appellant did not intentionally misrepresent her education, but that because the Appellant did not obtain a substantially equivalent education to that required in a Texas nursing education program. ALJ Shenoy recommended to the Board that Appellant's vocational nursing license should not be renewed, but she did not recommend license revocation.

Appellant argues in four points of error that 1) even if the education was not substantially equivalent to a Texas program, her vocational nursing education program was approved by the Florida Board of Nursing, she was licensed by the Florida Board of Nursing with that education, and when the Texas Board of Nursing

was presented with her educational credentials, the Texas Board of Nursing accepted that education and granted her a vocational nursing license, essentially waiving complaints about her educational preparation; 2) renewal of the Appellant's vocational nursing license is a ministerial act and the failure to renew her license is a clear abuse of discretion; and 3) denial of license renewal is essentially a revocation of the Appellant's license which requires a finding of a violation of Section 301.452(b) of the Texas Occupations Code, and without such a finding, the denial of renewal violates her due course of law rights under the Texas Constitution and is thus arbitrary and capricious.

## ARGUMENT

### A. <u>Standard of Review</u>

The judicial review of an administrative order is governed by the Administrative Procedure Act (APA). TEX. GOV'T. CODE § 2001.001, *et. seq*. In this case, the substantial evidence rule is the standard for judicial review for review of a decision in a contested case. TEX. GOV'T CODE § 2001.174. Section 2001.074 requires this Court to reverse or remand the case to the Board for further proceedings if substantial rights of the Appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

a. in violation of a constitutional or statutory provision;
b. in excess of the agency's statutory authority;
c. made through unlawful procedure;
d. affected by other error of law;

e. not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

f. arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Whether an order of an administrative agency is reasonably supported by substantial evidence is a question of law to be resolved by the Court. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000). The question before this Court is not whether the Board reached a proper factual conclusion on the basis of conflicting evidence in the record, but whether it acted arbitrarily and without regard to the facts. *Id.* at 565-66. The Court's duty is to consider the record as a whole to determine if the Board's Order is reasonably supported by substantial evidence. TEX. GOV'T CODE § 2001.174 (2)(E). If the proper test is whether the evidence in the record is such that reasonable minds could have reached the conclusion that the Board must have reached in order to justify its action. *See Hinkley v. Texas State Bd. of Med. Examiners,* 140 S.W.3d 737, 743 (Tex.App.-Austin 2004, pet denied). The Court is ultimately concerned with reasonableness of Board's decision, not its correctness. *Mireles v. Texas Dep't. of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999).

"An agency's decision is arbitrary or results from an abuse of discretion if the agency: (1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result." *City of El*

*Paso v. Pub. Util. Comm'n of Tex.,* 883 S.W.2d 179, 184 (Tex. 1994). "If an agency does not follow the clear, unambiguous language of its own regulations in making a decision, the agency's action is arbitrary and capricious and will be reversed." *Harris Cty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 119 (Tex. 2017). Thus arbitrary and capricious agency action as a ground for reversal presents a question of law that the court reviews de novo. *Pub. Util. Comm'n v. City Pub. Serv. Bd.,* 109 S.W.3d 130, 135 (Tex. App.—Austin 2003, no pet.).

While substantial-evidence review is applied to an agency's fact findings, the court reviews an agency's legal conclusions de novo. *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 441 (Tex. App.—Austin 2011, pet. denied). Questions of statutory construction are also reviewed de novo. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). In general, statutes should be read in context and construed using rules of grammar and common usage, unless such a meaning would lead to an absurd result. TEX. GOV'T CODE § 311.011; *See also City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex.2008). If the statue is one which the Board is charged with enforcing, such as Chapter 301 of the Occupations Code (Nursing Practice Act), the Court must give "serious consideration" to the interpretation of the statute by the agency. *R'R Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water,* 336 S.W.3d 619, 624 (Tex.2011). While the Texas Supreme Court never expressly adopted *Chevron*

deference in *Texas Citizens*, it does state that the serious consideration inquiry adopted by the Court is similar to the analysis contemplated in *Chevron*. *Id.*, at 625, *citing* C*hevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, (1984).[2] Since *Texas Citizens* is built along the same analytical scaffolding as *Chevron,* the 2024 abrogation of *Chevron* by the United States Supreme Court in *Loper Bright* certainly will bring administrative agency deference into question in Texas, too. *Loper Bright Enters. v. Raimondo, Sec'y of Commerce*, 603 U.S. 369, 144 S.Ct. 2244 (2024). And as the United States Supreme Court noted in *Loper Bright*, when the ambiguity in a statute is regarding the scope of the agency's own powers, deference to the agency is least appropriate. *Loper Bright*, 603 U.S., at ___, 144 S.Ct., at 2266.

In the first case where the Texas Supreme Court specifically addressed the results of *Loper Bright*, the Court considered a petition for review related to a pair of challenges to the Texas workers compensation program, one a broad facial challenge to a rule promulgated under the program, and the other a challenge to a specific award to a single claimant. *Accident Fund Ins. Co. of Am. v. Tex. Dep't of Ins.*, 23-0273, 23-0950, at *3 (Tex. Feb 07, 2025). In addressing the challenges, the Court noted in *dicta* that while they have hinted at the analysis would be similar, this was not the "time to transform similarity into sameness", but that a future challenge

---

[2] The Railroad Commission argued in the case that ""state law principles regarding judicial deference to an agency's interpretation of a statute it implements are closely aligned to federal-court precedent." *Id.*

to a specific agency statutory interpretation could allow the court to assess critically an agencies power to interpret statutory ambiguity. Id., at *10.

An agency clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992), citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985). "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Packer*, 827 S.W.2d, at 833. If the only issue presented for review involves a purely legal determination, the proper standard of review is de novo. *Ex Parte Myers*, 68 S.W.3d 229 (Tex. App. 2002), *citing Walker v. Packer*, 827 S.W.2d, at 840.

This matter, however, is only in part a consideration of the reliable and probative evidence in the record which gives rise to the Board's findings. The issues presented by Appellant turn not on the evidence in the records, but on the interpretation of the statutory authority of the Board, which Appellant notes that the Court reviews de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). *See also Rogers v. Texas Board of Architectural Examiners*, 390 S.W.3d 377, 384 (Tex. App.-Austin 2011, no pet.). And when a statutory violation has occurred, there is no need for the court to address substantial evidence issues. *Levy v. Texas State Bd. of Med. Exam'rs*, 966 S.W.2d 813, 816 (Tex. App.-Austin 1998, no pet.).

## B.       The Nursing Practice Act and Board Rules

Chapter 301 of the Texas Occupations Code is the statutory authority for creation of the Board of Nursing and defines the Board's responsibilities and powers for regulating nursing education licensure and practice. By statute, the Board defines the practice of nursing as well as the grounds for the Board to investigate allegations of unlawful or substandard nursing practice or unprofessional conduct and take disciplinary action against licensees for violation of the Nursing Practice Act and Board rules.

Section 301.452 of the NPA specifies grounds for disciplinary action and describes the violations for which the Board can take disciplinary action. In this case, the Appellant was charged with violating Sections 301.452(b)(1), (2), (5), & (10), which read as follows:  (b)  A person is subject to denial of a license or to disciplinary action under this subchapter for: (1) a violation of this chapter, a rule or regulation not inconsistent with this chapter, or an order issued under this chapter; (2) fraud or deceit in procuring or attempting to procure a license to practice professional nursing or vocational nursing; (5) use of a nursing license, diploma, or permit, or the transcript of such a document, that has been fraudulently purchased, issued, counterfeited, or materially altered; and (10) unprofessional conduct in the practice of nursing that is likely to deceive, defraud, or injure a patient or the public. AR, at 394.  Conclusion of Law No. 7 in the Proposal for Decision found that Board

Staff failed to meet the burden of proof that Ms. Appellant violated Subsections (b)(2) or (b)(5). *Id*., at 4809. The PFD did not address violations of Subsections (b)(1) or (b)(10), but the Board adopted the PFD without invoking the authority of Section 2001.058(e) of the Government Code to make any changes to the PFD to find a violation within Section 301.452. *Id*., at 4898 – 4900.

The Board defines unprofessional conduct by rule at 22 TEX. ADMIN. CODE §217.12. The Appellant was charged with violating Board Rules 217.12(4) & (6)(H) of the unprofessional conduct rule. *Id*., at 394. Board Rule 217.12 (4) holds that it is unprofessional conduct for a nurse to engage in "[c]onduct that may endanger a client's life, health, or safety." 22 TEX. ADMIN. CODE §217.12 (4). Board Rule 217.12(6)(D) holds it is unprofessional conduct if a nurse engages in misconduct, which is defined as actions or conduct that include, but are not limited to violating professional boundaries of the nurse/client relationship including but not limited to physical, sexual, emotional or financial exploitation of the client or the client's significant other(s). 22 TEX. ADMIN. CODE §217.12 (6)(H). In the PFD, AKJ Shenoy did not find a violation of the unprofessional conduct rule, Board Rule 217.12, and the Board adopted the PFD without invoking the authority of Section 2001.058(e) of the Government Code to make any changes to the PFD.

Under Section 301.157(d) of the Occupations Code, acceptance of an educational credential from a program approved by another state and the Board is

subject to subsection d-4. This subsection reads "[t]he board may recognize and accept as approved under this section a school of nursing or educational program operated in another state and approved by a state board of nursing or other regulatory body of that state." TEX. OCC. CODE § 301.157(d-4).  The use of the term "may" indicates that the Board has discretionary authority or permission to take an action. TEX. GOV'T CODE § 311.016(1).

Section 301.252 of the NPA governs the technical aspects of licensure applications. The section requires a nurse has completed an educational program approved under Section 301.157, passage of a jurisprudence examination, and the nurse shows good professional character at the time of the application. TEX. OCC. CODE § 301.252.

Section 301.260 of the NPA governs the granting of a temporary license by endorsement when a licensee from another state applies for licensure by endorsement, providing they show evidence they possess the qualifications necessary at that time to have been eligible for licensing in this state, and provides proof their license in the other state is currently valid, and has not been disciplined. TEX. OCC. CODE § 301.260.  ALJ Shenoy did cite this section in Conclusions of Law No. Fourteen (14) and Fifteen (15). AR, at 4809, Findings of Fact Nos. 14 & 15.

Section 301.451 of the NPA prohibits certain practices. Subsection (1) prohibits a person from selling, fraudulently obtaining, or fraudulently furnishing a

nursing diploma, license, renewal license, or record. TEX. OCC. CODE § 301.451(1). Subsection (3) prohibits a person from practicing "nursing under a diploma, license, or record that was: (A) obtained unlawfully or fraudulently; or (B) signed or issued unlawfully or under false representation. TEX. OCC. CODE § 301.451(3). The PFD did not address violations of Section 301.451 in the Findings of Fact or Conclusions of Law.

Section 301.453 of the NPA addresses the disciplinary authority of the Board and methods of discipline available to the Board for a violation of the NPA. TEX. OCC. CODE § 301.453 et. seq. Subsection (a)(1) does allow that "denial of the person's . . ., license renewal, . . . is an available disciplinary action for a violation of Section 301.452(b). TEX. OCC. CODE § 301.453(a)(1). This section of the NPA was not addressed in the Findings of Fact or Conclusions of Law.

Board Rule 214 addresses the requirements for Vocational Nursing Education programs in the State of Texas. 22 TEX. ADMIN. CODE § 214 et. seq. With regards to licensure by endorsement, at the relevant time (March 2021), Board Rule 217.5(a)(1) provided that licensure by endorsement was available only to "[a] nurse who has practiced nursing in another state within the four years immediately preceding," and who could establish "graduation from an approved nursing education program," among other requirements. *See* 22 TEX. ADMIN. CODE § 217.5(a)(1). There was no requirement that the nursing education program be "substantially equivalent to a

Texas nursing education program. 47 TEX. REG. 6581 (October 7, 2022) (There were no changes from the proposed text published in the August 19, 2022 Texas Register. 47 TEX. REG. 4935).

Board Rule 213.27 is the Board's good professional character rule. 22 TEX. ADMIN. CODE § 213.27 et. seq. This section of the NPA was not addressed by ALJ Shenoy in the Findings of Fact or Conclusions of Law of the PFD.

With regards to the procedures the Board has adopted to process a proposal for decision, the procedures are contained in Board Rule 213.23. Relevant to the instant case, a party of record that is adversely affected by a proposal for decision has the opportunity to file exceptions to the proposal for decision with the Administrative Law Judge. 22 TEX. ADMIN. CODE § 213.23(c).[3] The Board has essentially adopted TEX. GOV'T CODE §2001.058(e) by rule, defining the ability of the Board to change a finding of fact or conclusion of law if the Board determines that certain conditions have been met. 22 TEX. ADMIN. CODE § 213.23 (f).[4] Finally,

---

[3] "Any party of record who is adversely affected by the proposal for decision of the judge shall have the opportunity to file with the judge exceptions to the proposal for decision and replies to exceptions to the proposal for decision in accordance with 1 TAC §155.507. The proposal for decision may be amended by the judge in accordance with 1 TAC §155.507 without again being served on the parties."

[4] "It is the policy of the Board to change a finding of fact or conclusion of law in a proposal for decision or to vacate or modify the proposed order of a judge when, the Board determines: (1) that the judge did not properly apply or interpret applicable law, agency rules, written policies provided by staff or prior administrative decisions; (2) that a prior administrative decision on which the judge relied is incorrect or should be changed; or (3) that a technical error in a finding of fact should be changed."

if the Board does modify, amend or change the proposal for decision, the specific reason and legal basis for the change must be included in the order. 22 TEX. ADMIN. CODE § 213.23 (g).[5] In this case, the Board did not change any findings of fact or conclusions of law, nor did the Board cite Section 2001.058(e) in their Opinion and Order of the Board.

**C.** **Appellant's Nursing Education was Accepted by the Texas Board of Nursing During the Endorsement Process under Texas Occupations Code § 301.157(d-4)**

The PFD from Judge Shenoy asserts that the Sacred Heart program was not approved by the Texas BON, accredited by a national nursing accreditation agency, or approved by the Florida BON and accepted by the Texas BON. AR, at 4806, Findings of Fact Nos. 36, 37, 38, & 39. Appellant does not argue, nor is there evidence that the Sacred Heart program was approved by the Texas BON, or that the program was accredited by a national accreditation agency. However, Appellant asserts that Sacred Heart was approved by the Florida BON and the Florida Commission for Independent Education, which approve nursing programs in concert under Florida law according to Sherry Sutton-Johnson, the Director of Nursing Education for the Florida Board of Nursing. *See* AR, at 643–646, Board Exhibit 13.

---

[5] "If the Board modifies, amends, or changes the recommended proposal for decision or order of the judge, an order shall be prepared reflecting the Board's changes as stated in the record of the meeting and stating the specific reason and legal basis for the changes made according to subsection (f) of this section."

The Sacred Heart program is specifically referenced in paragraphs 17 – 19 as having been approved in November 2013 to offer practical nursing (known as vocational nursing in Texas) education. *Id*., at 644, ¶17. That approval extended until at least June 2021 when the school was not allowed to admit new students. *Id*., at 645, ¶19

Under Section 301.157(d) of the Occupations Code, acceptance of an educational credential from a program approved by another state and the Texas BON is subject to subsection d-4. This subsection reads "[t]he Board may recognize and accept as approved under this section a school of nursing or educational program operated in another state and approved by a state board of nursing or other regulatory body of that state." TEX. OCC. CODE § 301.157 (d-4). This recognition is a discretionary act, and by licensing the Appellant, the Board has accepted the credentials as presented by the Appellant in March 2021. AR, at 580–596, Board Exhibit 1.

Appellant applied for Texas licensure as a LVN after she obtained an LPN license in Florida in January 2021. The Board granted the Appellant her license on March 22nd, 2021 with full knowledge that the Appellant had received her educational credentials from Sacred Heart International Institute in Florida. The Texas BON did not object to Appellant's educational credentials at the time of her initial application for licensure, and there is no evidence the Appellant intentionally misrepresented her educational credentials in her license applications. AR, at 4808,

Conclusion of Law No. 7.

Appellant notes there is no dispute that the Texas BON accepted her educational credentials from Sacred Heart International Institute from her endorsement application in March 2021. Beyond just showing evidence the Appellant had completed an approved vocational nursing program, Appellant argues this shows that the Board considered that her education was substantially equivalent to Texas standards in March 2021 when the Texas BON granted the Appellant a Licensed Vocational Nursing license. TEX. OCC. CODE § 301.157(d) & (d-4).

In the alternative, Appellant argues that acceptance of her education acts as a waiver by conduct of the alleged deficiencies in the Appellant's educational preparation. Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam). Waiver is ordinarily a fact question, but when the surrounding facts and circumstances are undisputed waiver may be decided as a matter of law. *Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999) (per curiam). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Jernigan*, 111 S.W.3d at 156. In other words, to establish waiver by conduct, that conduct must be 'unequivocally inconsistent with claiming a known right'. *Shields Ltd. P'ship v. Bradberry*, 526

S.W.3d 471, 485 (Tex. 2017) (quoting *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005)).

This is not the same as the bar on waiver by conduct related to sovereign immunity which was first suggested in *Federal Sign*. *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 408 n.1 (Tex. 1997). The footnote in *Federal Sign* suggested that sovereign immunity might be waived by conduct. But subsequent case law starting with *Little-Tex* has expressly rejected the doctrine for sovereign immunity, especially in light of legislative action to create a dispute resolution procedure for contract issues like those in *Federal Sign* and *Little-Tex*. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001).[6]

Applying the facts in the current case, Appellant argues the facts are not in dispute, that the Board issued a LVN license to the Appellant with knowledge that her LVN education was obtained by Sacred Heart, and that she met all other requirements for licensure by endorsement. The Board granted that license without questioning the provenance of the Appellant's education. Further, there was no factual basis for the proposition that the Appellant intentionally misrepresented her education or otherwise caused the Board to have false information. The Board's actions in granting a nursing license to the Appellant was an intentional

---

[6] *See generally* Chapter 2260 of the Tex. Gov't Code for the referenced dispute resolution process, though it isn't relevant to the current dispute.

relinquishment of, or was intentional conduct inconsistent with, the right to complain about the alleged quality of the underlying diploma. *Chalker Energy Partners Iii, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668 (Tex. 2020).

**D.** **There is No Authority for the Assertion That Appellant Had the Burden of Persuasion to Show She was Nonetheless Qualified for Licensure Upon Application for Renewal**

In the Proposal for Decision (PFD), Judge Shenoy asserts the Appellant has a burden of persuasion to show she is qualified for licensure. Conclusion of Law No. 5 reads as follows:

> To determine whether denial of the Renewal is warranted, Staff had the burden of identifying the legal standards alleged to apply and to produce evidence that they were not met, and Respondent had the ultimate burden of persuasion to show her qualifications for the privilege of continuing nursing practice in this state. TEX. GOV'T CODE §§ 2001.051-.052; 1 TEX. ADMIN. CODE § 155.427; *Scally*, 351 S.W.3d at 446-48.

AR, at 4808; Conclusion of Law No. 5.

Sections 2001.051 & .052 of the Government Code address the due process requirements for formal administrative hearings under the APA. *See* TEX. GOV'T CODE §§ 2001.051-.052. These sections do not address the issues of the burden of proof, burden of production, or burden of persuasion.

The case cited, *Scally*, discuss the due process rights due licensed individua in the judicial review process for a disciplinary action for a professional license. *Scally*, 351 S.W.3d, at 446–48. The Appellant agrees that *Scally* is applicable in this

case to the proposition that 1) Appellant's license is a constitutionally protected property interest, *Id.*, at 446, and 2) that constitutionally protected property rights at a minimum requires notice and an opportunity to be heard in a meaningful manner. *Id.*, at 447 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)), what *Scally* does not address the legal standard related to the denial of license renewal, nor does it ever mention that any party has a burden of persuasion.[7]

SOAH Rule 155.427 does address the burden of proof in a formal administrative proceeding:

> In determining which party bears the burden of proof, the judge shall first consider the applicable statute, the referring agency's rules, and the referring agency's policy in accordance with § RSA 155.419 of this chapter. After considering those sources, the judge may consider additional factors, including:
>    (1) the status of the parties;
>    (2) the parties' relative access to and control over information pertinent to the merits of the case;
>    (3) the party seeking affirmative relief;
>    (4) the party seeking to change the status quo; and
>    (5) whether a party would be required to prove a negative.

1 TEX. ADMIN. CODE § 155.427.

The Board has argued in the courts below that there is a burden of persuasion that requires a party to persuade the trier of fact that a fact is indeed true, citing a criminal

---

[7] A search of the *Scally* opinion yields no mention of the term "persuasion" or "renewal". What *Scally* does address is whether a licensee who had their license revoked by a licensing agency can continue to practice pending appeal. While Appellant did request a temporary injunction pending this appeal, at this time no injunction has issued.

case from 1993, *Alford v. State*. 806 S.W.2d 581, 585 (Tex. App.—Dallas, 1991),

aff'd, 866 S.W.2d 619 (Tex. Crim. App. 1993). However, in this case, the issue was

if the United States Constitution mandated the burden of persuasion remain with the

state when a criminal defendant raises an affirmative defense of duress under

substantive due process. The Texas Penal Code, however, shifts the burden of

persuasion to the defendant, *Id.*, at 584, and the Court of Criminal Appeals held this

did not violate substantive due process. Id., at 589. The instant case is not a criminal

case like *Alford*. Neither is there a statutory requirement that the Appellant carry the

burden of proof upon an application for renewal of a nursing license. Appellant thus

argues the reliance by the Board on *Alford* is misplaced to support the shift of a

burden of persuasion to Appellant.

The only other type of case in the last 30 years where Appellant could find a

split in the factors between burdens of production and persuasion involve

employment discrimination cases which implicates a burden shifting analysis from

United States Supreme Court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802–04 (1973). If a plaintiff in an employment discrimination case can make a prima

facie case for employment discrimination, the burden of production shifts to the

employer to articulate a legitimate, non-discriminatory reason for the unequal

treatment, but the burden of persuasion remains continuously with the plaintiff.

*Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 423 (Tex. App.-Houston [1st

Dist.] 2000, no pet.), *citing McDonnell Douglas*, 411 U.S., at 802–03. Again, the current case is not a similar type of case – while administrative licensing issues can have some similar features to employment discrimination and criminal defense cases, the relative position of the litigants here militates against a shifting burden of persuasion because the Appellant is always in the position of the defendant and there is no affirmative defense that is applicable. In addition, the Board has articulated no case law in the courts below that would tend to support a shifting of the burden of persuasion in the context of an administrative licensing action.

Absent statutory authority, or case law supporting such actions, the Appellant argues that by the Board adopting a Proposal for Decision shifting the burden of persuasion in a licensing case, even if the Board retains the overall burden of proof, is an action in excess of the agency's statutory authority, making this a decision that was arbitrary or capricious and characterized by an abuse of discretion, or was a clearly unwarranted exercise of discretion.

Two conclusions of law in the Proposal for Decision use this shifting burden of persuasion:

- Conclusion of Law No. 14: Based on the foregoing Findings of Fact and Conclusions of Law, Staff produced evidence to show Respondent did not successfully complete an approved program of vocational nursing, and Respondent did not meet her burden of persuasion to show she was nonetheless qualified. Tex. Occ. Code §§ 301.157(d), .260; 22 Tex. Admin. Code § 217.5(a)(1).

- Conclusion of Law No. 15: Based on the foregoing Findings of Fact and Conclusions of Law, Staff produced evidence to show Respondent did not achieve an education substantially equivalent to Texas standards, and Respondent did not meet her burden of persuasion to show she was nonetheless qualified. Tex. Occ. Code § 301.260; 22 Tex. Admin. Code § 217.5(a)(1)(B).

AR, at 4809. Conclusions Nos. 14 & 15.

If there is no shifting of the burden of persuasion, then these Conclusions of Law are improper. Nowhere in the Proposal for Decision does Judge Shenoy explain how or under what authority, either in statute or in case law, requires the Appellant to carry a burden of persuasion that she is qualified after the Board has accepted her education for licensure by endorsement. Thus, Appellant argues this cannot support a contention that the Board should be allowed to deny renewal of Appellant's nursing license.

**E.** **The Board may not Base Disciplinary Action, including Denial of License Renewal, When no Violation of Section 301.452(b) is Found.**

The Board argues that license renewal is not a ministerial act, the Board asserts it has discretion to refuse to renew a nursing license under Section 301 of the Texas Occupations Code. Appellant does not contest that the Board may deny renewal of licensure for failure to comply with continuing competency requirements, conviction for certain criminal offenses, or adjudication a nurse is no longer fit to practice. 22 TEX. ADMIN. CODE § 216.11; 22 TEX. ADMIN. CODE § 213.28(k)(1); 22 TEX. ADMIN. CODE § 213.29. Appellant does not generally object to the contention

that the denial of a renewal would be appropriate under Section 301.453(a)(1) of the NPA, which states that if "a person has committed an act listed in Section 301.452(b)", they are subject to disciplinary action, which is defined to include denial of license renewal. TEX. OCC. CODE § 301.453(a)(1). But in this case, there was no finding that Appellant committed an act listed in Section 301.452(b).

The authority to deny renewal of a nursing license is thus premised on a violation that would also lead to a disciplinary action, not as an independent action that can be taken without reference to Section 301.452(b). The Board's Third Amended Formal Charges specifically cited the following alleged violations did contain references to Sections 301.452(b)(1), (2), (5), & (10). AR, at 576; Board Exhibit 3e, at 10. But in her PFD, ALJ Shenoy only addressed Subsections (b)(2) & (5) in the findings of fact and conclusions of law, holding that the Board had failed to meet its burden of proof as to those subsections. AR, at 4808, Conclusion of Law No. 7. At no point in the PFD does ALJ Shenoy specifically find there was a violation of Sections 301.452(b)(1) or (10), the Board failed to file exceptions to the PFD asking ALJ Shenoy to fix that error, and the Board adopted the PFD without changing the PFD or otherwise mentioning a violation of Sections 301.452(b)(1) or (10). AR, at 4898–4900, Opinion and Order of the Board. As the Board adopted a PFD without a violation of Section 301.452(b) of the Texas Occupations Code, the Board does not have the authority to deny renewal of Appellant's nursing license.

A clear failure by the ALJ to analyze or apply the law correctly constitutes a clear abuse of discretion. *Packer*, 827 S.W.2d, at 839–840. As the Appellant has complied with all of the requirements listed in the NPA and Board Rules for renewal of her license, the Board issued an Order and Opinion of the Board that contained no asserted violations of Section 301.452(b) of the Texas Occupations Code, and renewal of the license is a ministerial duty, the Board action to uphold the denial of renewal is a clear abuse of discretion.

**F.** **Renewal of a Nursing License is a Ministerial Duty and Failure to Renew Appellant's License is a Clear Abuse of Discretion**

If we are looking for a standard for the renewal of a nursing license, the process is found in Section 301 of the Nursing Practice Act. Specifically, Section 301 states that "A person may renew an unexpired license issued under this chapter on payment to the Board of the required renewal fee before the expiration date of the license and compliance with any other renewal requirements adopted by the Board." TEX. OCC. CODE § 301.301(b). This squarely puts the responsibility for renewing a nursing license on the Appellant but does not specify any additional requirements other than paying a fee and completing other renewal requirements in the Board's rules. The NPA does address some additional requirements, including criminal background checks, TEX. OCC. CODE § 301.3011(a), and continuing competency. TEX. OCC. CODE § 301.303–308.

Looking farther into the Board's rules, there is no single rule that addresses

license renewal. Board Rule 216.11 asserts that the consequence of failing to comply with the continuing competency requirements contained in Board Rule 216 is the denial of license renewal. 22 TEX. ADMIN. CODE § 216.11. Failure to pay the indicated fee is also listed as a matter where denial of license renewal is required. *Id.* There are several instances where the Board may "deny license renewal",[8] but nowhere in the Board's rules does it indicate the licensees right to due process is in any way affected before a license renewal may occur. Finally, failure to renew a license is covered in Board Rule 217.6, but nowhere in that rule does the Board impose any additional requirements on renew beyond paying the required fee and complying with the continuing competency rule. 22 TEX. ADMIN. CODE § 217.6.

The nature of an administrative action in licensure is to operate as a penal statute. *Schwab v. Schlumberger Well Surveying Corp.,* 198 S.W.2d 79, 81 (Tex. 1946) ; *Sheffield v. Nobles,* 378 S.W.2d 391, 392 (Tex.App.–Austin 1964, writ ref'd) (statute is "highly penal in nature and one which could produce great hardship"). While these situations often occur in the matter of taxes, *See Hovel v. Gatzri*, 490 S.W.3d 132, 136 (Tex.App.–Houston [1st Dist.] 1964), citing Robert W. Hamilton, *The Corporate Entity,* 49 Tex. L.Rev. 979, 995–96 (1971) (describing individual liability arising from failure to pay franchise taxes as "[d]raconian provision"), they

---

[8] The denial of licensure renewal is referenced in the context of fitness to practice, 22 Tex. Admin. Code § 213.29(c), (f)(1); and bars to licensure due to criminal justice issues, 22 Tex. Admin. Code § 213.28(k)(1).

can arise in other types of cases. If a statute is 'penal in nature', it therefore must be 'strictly construed' to protect individuals against whom liability is sought." *Willis v. BPMT, LLC,* 471 S.W.3d 27, 33 (Tex.App.–Houston [1st Dist.] 2015, no pet.). The rule of lenity, or that an ambiguous statute must be interpreted in the most favorable light to the individual and not the state, can also be applied to a penal civil statute in a strict construction method of interpretation. *See, e.g., City of Houston v. Jackson,* 192 S.W.3d 764, 770 (Tex.2006) ("we have consistently held that penal statutes should be strictly construed").

Courts may grant some deference to an agency's interpretation of a statute if it is charged with enforcing that statute, so long as its interpretation is reasonable and does not conflict with the statute's language. *McClelland v. Tex. Health & Human Servs. Comm'n*, 635 S.W.3d 410 (Tex. App. 2021), *citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984) (stating two-part test for deference to agency construction of statute); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). But in *Loper Bright*, the United States Supreme Court stuck down *Chevron* deference for the federal administrative agencies, holding that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is

ambiguous." *Loper Bright*, 603 U.S., at ___, 144 S.Ct., at 2273.[9] Given the current bent of the Texas Supreme Court, it is not hard to see that even the more limited deference to agency interpretations in *Texas Citizens* could fall, especially for ambiguous statutory construction issues. *Accident Fund*, 23-0273, 23-0950, at *3.

The decline of agency deference under *Loper Bright* and the rule of lenity argue that interpretation of Board authority to deny a renewal of an otherwise active license must be interpreted in the light most favorable to the Appellant. In this case, it is not totally clear in the NPA that the Board has independent authority to deny the renewal of a nursing license absent a violation of Section 301.452(b). Appellant argues the proper interpretation is that because the Appellant has not been found to have violated section 301.452(b), there is no independent authority to deny the renewal of Appellant's nursing license.

A ministerial duty occurs "when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson v. City of Seven Points*, 806 S.W.2d 791 (Tex. 1991). The Texas Attorney General's Office has consistently provided guidance over the years to public officials charged with the duty to process various kinds of filed instruments and documents that the officials must file instruments which appear regular on its

---

[9] See, *e.g.*, *Cargill* v. *Garland*, 57 F. 4th 447, 465–468 (CA5 2023) (plurality opinion) (May the Government waive reliance on *Chevron*? Does *Chevron* apply to agency interpretations of statutes imposing criminal penalties? Does *Chevron* displace the rule of lenity?).

face. *Mossman v. Banatex, LLC*, 479 S.W.3d 854, 861 (Tex. App. 2015), *citing* TEX.ATT'Y GEN. OP. No. LO–98–016 (1998) ("If a document covered by a filing statute is regular on its face, the clerk may not refuse to file it based on extraneous facts.").[10] The Board, under the NPA and Board Rules, has set out a process for the renewal of licenses that requires the filing of an instrument for license renewal, which the Appellant did file on or about April 7, 2023. AR, at 598–607, Staff's Exhibit 5.

There is case law which supports this assertion that renewal of a professional license is a ministerial act on the part of the Board. In *Texas State Board of Medical Examiners v. Mann*, the Texas State Board of Medical Examiners (now called the Texas Medical Board) refused to renew the license to practice medicine of Dr. Nathan Mann. *Texas State Bd. Of Med. Examiners v. Mann* 413 S.W.2d 382 (Tex. 1967). Dr. Mann's license had been revoked in 1958 and was subject to a subsequent lawsuit for judicial review under Article 4506, which allowed for a trial de novo at that time. *Id.*, at 382. The lawsuit was dismissed, and the court found the dismissal terminated the Medical Board action, and since Article 4506 at the time called for a

---

[10] *See also* TEX.ATT'Y GEN. OP. JM–166 (1984) ("This office has repeatedly held that a county clerk acts in a ministerial capacity in receiving certificates of nomination and in placing names of nominees on the general election ballot. Where the certificate is regular on its face, the county clerk has neither the duty nor authority officially to determine questions of regularity or irregularity, a process which would depend upon an ascertainment and determination of facts extraneous to the certificate.").

de novo trial that meant Dr. Mann's license was uncancelled and unrevoked. *Id.,* at 385. And since Dr. Mann's license was thus an active license, "issuance of the (renewal) license by the (Medical) Board was a ministerial duty." *Id.* As applied in this case, the renewal of a nursing license that is otherwise not revoked or delinquent is a ministerial act by the Board, and a license must be renewed on the payment of the fee and certification of continuing nursing education. TEX. OCC. CODE § 301.301–308; *Mann*, 413 S.W.2d at 385.

Nothing in the Board's rules indicates that the Texas BON has the discretion to deny the renewal of a license during the pendency of an investigation that may lead to disciplinary action. In this case, the Appellant filed a valid renewal application on or about April 7, 2023, while she held a valid, active nursing license. The Board initially asserted a denial of renewal of her license, AR, at 37–38 but did not actively list her denial of renewal when her license initially expired.[11] Nowhere in the Findings of Fact or Conclusions of Law does the PFD address the requirements or standard for renewal of Appellant's nursing license. Nothing in the NPA or Board rules requires the Appellant to carry a burden of persuasion to maintain her license to practice nursing. A clear failure by a trial court to analyze or apply the law correctly constitutes a clear abuse of discretion. *Packer*, 827 S.W.2d, at 839 - 840.

---

[11] No explanation has been proffered for this action in the record.

As the Appellant has complied with all of the requirements listed in the NPA and Board Rules for renewal of her license, and renewal of the license is a ministerial duty, the PFD and Board action to uphold the denial of renewal is a clear abuse of discretion.

**G.** **Revocation of Appellant's Nursing License by Denying Renewal of Her License Violates Appellant's Due Course of Law Rights Under the Texas Constitution and is Arbitrary and Capricious**

The Texas Constitution guarantees that '[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. Texas Constitution art. I, §19. A determination if the due course of law provisions of the Texas Constitution attach to any particular situation is a two-step process. The first inquiry is whether the Appellant has a liberty or property interest that is entitled to constitutional "protection. *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54,61 (Tex. 2018). The second is to determine the level of procedural or substantive due process due to protect the asserted liberty or property interest in the particular situation. *Mosley v. Texas Health & Human Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019).

As to the first factor, the Texas and United States Supreme Court have long recognized that due-course and due-process clauses can protect work-related economic interests, which have sometimes been characterized as the "right to earn a

living,", *Smith v. Decker*, 312 S.W.2d 632, 633 (Tex. 1958), or the right to engage in a "chosen profession. *Greene v. McElroy*, 360 U.S. 474, 492 (1959). In Goldberg v. Kelly, an expansive notion of property rights was endorsed by the United States Supreme Court:

> Much of the existing wealth in this country takes the form of rights that do not fall within traditional common-law concepts of property. It has been aptly noted that "[s]ociety today is built around entitlement. The automobile dealer has his franchise, the doctor and lawyer their professional licenses, the worker his union membership, contract, and pension rights, the executive his contract and stock options; all are devices to aid security and independence.
>
> *Goldberg v. Kelly*, 397 U.S. 254, 262 n.8 (1970).

As nursing is such a profession with a professional license, the right to engage in the nursing profession when an individual holds a nursing license clearly implicates the due course of law provisions of the Texas Constitution.

Statutes, and the corresponding regulations adopted by an agency pursuant to statutory authority, are presumed constitutional. *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). The party making an as-applied challenge to an professional regulation under the Due Course of Law provision must make a showing under either of the two *Patel* prongs: (1) the statute's purpose could not arguably be rationally related to a legitimate governmental interest; or (2) when considered as a whole, the statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest. *Id.* Appellant absolutely does

not contest that the Texas BON has a rational basis in the regulation and licensing of nursing education programs – arguably that is one of the two major pillars of regulation the Texas BON is charged with enforcing. *See* Texas Occupations Code §301.157 *et. seq*.

Appellant does not dispute that the NPA and the corresponding regulations adopted by the Board pursuant to statutory authority are presumed constitutional, but this is an as-applied challenge to a professional regulation under the Due Course of Law provision. *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). Further, Appellant acknowledges that the regulations promulgated by the Board are rationally related to a legitimate governmental interest, but instead Appellant argues here that when considered as a whole, the statute's actual, real-world effect as applied to the challenging party is so burdensome as to be oppressive in light of, the governmental interest. *Id.*

In this case, Appellant is asserting the second *Patel* factor, that the actual, real-world effect is oppressively burdensome. In Patel, a group of eyebrow threaders challenged a requirement for certain training in cosmetology that wasn't relevant to their trade. *Patel*, 469 S.W.3d at 89. The Texas Supreme Court held that the irrelevant training was not only unreasonable or harsh, but so oppressive that it violates the due course of law protected by the Texas Constitution. *Id.*, at 90. In opposition, Appellant notes that in *Garrett v. Texas State Board of Pharmacy*, a

recent decision out of the Third Court of Appeals, found that a pair of doctors challenging a ban against dispensing of dangerous drugs without a pharmacist license failed to establish the ban was "so burdensome as to be oppressive" because they were still practicing physicians. *Garrett v. The Tex. State Bd. of Pharm.*, 03-21-00039-CV, at \*12–14 (Tex.App.–Austin, Jan 25, 2023, no pet.), quoting *Patel*, 469 S.W.3d at 87.

In this matter, Appellant acknowledges that she does already have a license to practice nursing, but that license is the property interest that Appellant seeks to protect. This is unlike the situation in *Garrett*, where the physicians were basically attempting to expand the scope of their medical license, not defend against a state action to revoke that license. *Garrett*, 03-21-00039-CV, at \*13. Further, Appellant notes that Appellant argues instead this case is more analogous to the situation in *Patel*, where the eyebrow threaders were faced with an unreasonably oppressive training requirement which barred them from entry into the profession. But this isn't the end of the analysis, because this is an as-applied claim and the underlying scheme of regulation is not at issue here. Appellant agrees that the regulation of nursing education is rationally related to the statutes and rules at issue.

What is missing, however, is a discussion of why the outcome in this case is unreasonably oppressive. And to that argument, we must discuss the actions of the Texas and Florida Boards of Nursing in relation to *Mosley v. Texas Health and*

*Human Services Commission*. In *Mosley*, a nursing assistant was alleged to have abused a patient, and the Health and Human Services Commission (HHSC) proposed placing Mosley on a misconduct registry. *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 255 (Tex. 2019). After a hearing, Mosley decided to appeal, and filed for judicial review without filing a motion for rehearing, which was a prerequisite for judicial review. *Id.*, at 256. Mosley took this action in reliance on the letter accompanying the notice of violation from HHSC which quoted provisions of a repealed rule that did not address the requirement to file a motion for rehearing with the agency. *Id.* The Texas Supreme Court held that the misrepresentation "effectively deprived Mosely of her right to judicial review and violated her right to due process." *Id.*, at 263.

While *Mosley* directly addresses due process that is procedural in nature, the actions of the Texas BON and the Florida BON are analogous under a due course of law framework. While both agencies did not expressly mislead the Appellant, both agencies accepted the educational credentials from the Appellant, and the Florida BON and Florida Commission for Independent Education still considered the Sacred Heart program to be an approved program at the time Appellant presented her credentials. As in *Mosley*, Appellant relied on the representations embodied in the granting of her nursing license to bolster her good faith belief her educational credentials were granted lawfully and supported her claim to renewal of her nursing

license. Thus, the Texas BON's actions to deny the renewal of Appellant's license, essentially revoking her license, violate the Appellant's right to due process under the Texas Constitutions due course of law provisions.

Unlike the situation in *Garrett* where the physicians were basically attempting to expand the scope of their medical license, Appellant argues instead this case is more analogous to the situation in *Patel* where the eyebrow threaders were faced with an unreasonably oppressive training requirement which barred them from entry into the profession. *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d at 87. Appellant is already licensed, has been practicing for more than three years without any evidence to show that she is failing to care for patients adequately according to the standards of nursing practice. *See* 22 TEX. ADMIN. CODE § 217.11 et. seq. [12] To revoke Appellant's license at this time and cause her to have to go back through nursing school was unreasonably oppressive in the light that in order to be licensed by endorsement in the first place she was required to pass a national licensing examination which tests for the requisite knowledge base required for a licensed vocational nurse, pass a Texas jurisprudence and ethics examination, submitted fingerprints for a criminal background check, paid the requisite fees, and show proof that she was licensed in another jurisdiction at the time of application.

---

[12] Appellant notes that the Board has not charged her with violations of the standards of nursing practice under this Board Rule, and the Board presented no evidence of a negative practice history.

22 TEX. ADMIN. CODE § 217.5(a). To make the Appellant essentially complete a full nursing education program when she has already shown adequate core nursing knowledge is arbitrary and capricious.

The primary complaint of the Board, and the reason why they continue to argue that the Appellant did not complete a substantially equivalent nursing education program, is that her nursing education program did not properly offer in person, hands on clinical learning experiences. Notwithstanding Appellant's arguments at hearing that these clinical learning experiences were significantly affected by the COVID-19 pandemic. *See* AR, at 0645, Staff's Exhibit 13, ¶20; *See also* AR, at 4753–57. The Board's own rules suggest a solution that would allow for a fair and reasonable resolution, that would not be unreasonably oppressive under *Patel*: Under Board Rule 217.5(a)(1)(E)(i) or 217.5(a)(1)(F), a nurse who had gone through a "clinical competency program" could provide evidence of verified clinical practice, either in an employment setting or through an approved precepting program, could cure an issue with a program deemed not substantially equivalent to a Texas nursing program.[13] 22 Tex. Admin. Code §§ 217.5(a)(1)(E)(i); (a)(1)(F). Appellant argues that the failure of the Board to consider all potential mechanisms

---

[13] Appellant acknowledges that these programs are not strictly "clinical competency programs" under the meaning of the term in TEXAS HEALTH & SAFETY CODE § 108.005, but that her ability to have passed a national licensing exam and complied with all other requirements for licensure

to cure a nursing education that is allegedly not substantially equivalent makes this unreasonably oppressive under *Patel*, and therefore arbitrary and capricious.

An agency's order is arbitrary and capricious if the order is not supported by substantial evidence. *Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.,* 665 S.W.2d 446, 454 (Tex.1984). Even if supported by substantial evidence, however, an agency order may be arbitrary and capricious if a denial of due process has prejudiced the litigant's rights or if the agency has improperly based its decision on non-statutory criteria. *Id.; Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Comm'n,* 855 S.W.2d 792, 794-95 (Tex.App.-Austin 1993, no writ). Similarly, an agency decision may be found to be arbitrary and capricious if it is based on legally irrelevant factors or if legally relevant factors were not considered or if the agency reached an unreasonable result. *Texas Department of Insurance v. State Farm Lloyds,* 233, 246 (Tex.App.-Austin 1993, no pet.). *See also* City of El Paso v. Public Util. Comm'n., 883 S.W.2d 179, 184 (Tex. 1994).

## CONCLUSION

Appellant argues that even if the education was not substantially equivalent to a Texas program, her vocational nursing education program was approved by the Florida Board of Nursing, she was licensed by the Florida Board of Nursing with that education, and when the Texas Board of Nursing was presented with her educational credentials, the Texas Board of Nursing accepted that education and

granted her a vocational nursing license, essentially waiving complaints about her educational preparation. In addition, SOAH ALJ Shenoy improperly found that the Appellant had a burden of persuasion to show she was qualified to hold a license when she filed her application for license renewal, Further, renewal of the Appellant's vocational nursing license was a ministerial act and the failure to renew her license is a clear abuse of discretion. Finally, denial of license renewal is essentially a revocation of the Appellant's license which requires a finding of a violation of Section 301.452 (b) of the Texas Occupations Code and without such a finding violates her due course of law rights under the Texas Constitution and is arbitrary and capricious. As the actions of the Texas Board of Nursing were arbitrary and capricious, and thus was an abuse of discretion, this case should be remanded to the Texas Board of Nursing for actions consistent with the arguments herein.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Appellant, Edith Okechukwu Omietimi, respectfully prays that this Honorable Court **REVERSE** the Board of Nursing action denying renewal of her license as a Vocational Nurse and **REMAND** to the Board of Nursing for proceedings consistent with the Court's ruling and for such other and further relief as the Appellant may show herself entitled in law or equity.

Respectfully submitted,

By: *Marc M Meyer*

Marc M. Meyer
Texas Bar No. 24070266
2300 Woodforest Pkwy N. STE 600
Montgomery, TX 77316
Tel. (281) 259-7575
Attorney for Appellant Edith Okechukwu Omietimi

## CERTIFICATE OF SERVICE

I certify that on May 28th, 2024, a true and correct copy of the above and foregoing document was served on the following individual(s) at the location(s) and in the manner indicated below:

Kathy Johnson
Assistant Attorney General
Office of the Attorney General
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
VIA State efiling platform

John Vanderford
Deputy General Counsel
Texas Board of Nursing
1800 Congress Ave., Suite 10-200
Austin, TX  78701

*Marc M Meyer*

Marc M. Meyer

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Teex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P 9,4(i), if applicable, because it contains 10,236 words, excluding any parts exempted by Tex. R. App. P 9.4(i)(1).

_Marc M Meyer_

Marc M. Meyer

# Appendix A

## CAUSE NO. D-1-GN-24-003659

| | | |
|---|---|---|
| **EDITH OMIETIMI,** *Plaintiff,* | § § § | **IN THE DISTRICT COURT OF** |
| **v.** | § § § | **TRAVIS COUNTY, TEXAS** |
| **TEXAS BOARD OF NURSING,** *Defendant.* | § § § § | **419TH JUDICIAL DISTRICT** |

## FINAL JUDGMENT

The captioned suit for judicial review came before the Court for trial on December 19, 2024. Plaintiff, Edith Omietimi, was present through counsel, Marc Meyer. Defendant, Texas Board of Nursing, was present through its counsel, Assistant Attorney General Kathy Johnson, Office of the Attorney General.

Having reviewed and considered the redacted administrative record, the evidence admitted at trial, the parties' briefs, and the other relevant material on record, and having heard the arguments of counsel, the Court determines that the Defendant Texas Board of Nursing's Final Order dated April 18, 2024 (Final Order) is supported by substantial evidence. The Court also finds that the Final Order is NOT: 1) in violation of a constitutional or statutory provision; 2) in excess of statutory authority; 3) made through unlawful procedure; 4) affected by other error of law; 5) arbitrary or capricious; or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1.   The Final Order is in all respects AFFIRMED;

3.   All parties bear their own costs; and

4.   All relief not expressly granted herein is DENIED.

This is a final judgment and disposes of all claims of all parties.

IT IS SO ORDERED, ADJUDGED AND DECREED on

_____February 19_____, 2025.


_____
THE HONORABLE MAYA GUERRA GAMBLE
Judge of the 459th Judicial District Court
Travis County, Texas

Cause No. D-1-GN-24-003659, Final Judgment

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Marc Meyer on behalf of Marc Meyer
Bar No. 24070266
marc@marcmeyerlawfirm.com
Envelope ID: 101360607
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Brief
Status as of 5/29/2025 7:28 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Meyer | | marc@marcmeyerlawfirm.com | 5/28/2025 11:45:43 PM | SENT |
| John Vanderford | 24086670 | jvanderford@gmail.com | 5/28/2025 11:45:43 PM | SENT |
| Katherine Johnson | 24126964 | kathy.johnson@oag.texas.gov | 5/28/2025 11:45:43 PM | SENT |
| Sandra Thornton | | sandra@marcmeyerlawfirm.com | 5/28/2025 11:45:43 PM | SENT |

Associated Case Party: EdithOkechukwuOmietimi

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Meyer | | marc@marcmeyerlawfirm.com | 5/28/2025 11:45:43 PM | SENT |
| Sandra Thornton | | sandra@marcmeyerlawfirm.com | 5/28/2025 11:45:43 PM | SENT |